IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| ANLOC, LLC | § | CASE NO. 17-35952 |
| Debtor. | § | (Chapter 11) |

**CREDITORS' RESPONSE TO DEBTOR'S MOTION TO
CONVERT INVOLUNTARY CHAPTER 11 TO VOLUNTARY CHAPTER 7**

**PURSUANT TO LOCAL RULE 9013:**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Petitioning creditors, Wilburn Energy, LLC, Arduous Energy Group, LLC, Anastasios Pistofidis, and creditors who have signed on as to form and substance file this response and objection to debtor's Motion for Conversion of Cases from Chapter 11 to Chapter 7 (the **"*Motion*"**) and would respectfully show the Court as follows:

## INTRODUCTION

1. Creditors Wilburn Energy, LLC, Arduous Energy Group, LLC, Anastasios Pistofidis, TEC Well Service LLC, Energy Fishing & Rental Services, Inc. and K-3 Resources, L.P. filed an Involuntary Chapter 11 bankruptcy petition against debtor, Anloc, LLC, on October 25, 2017.

2. The Court entered its Order for Relief on January 2, 2018.

3. The U.S. Trustee filed a United States Trustee's Report of Inability to Appoint a Creditors' Committee on January 18, 2018.

4. Debtor filed a motion to convert the Involuntary Chapter 11 to a Chapter 7 on January 24, 2018.

5. Creditors objecting to this conversion present this response.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157.

## NOTICE TO COURT OF POTENTIALLY FRAUDULENT TRANSFERS

7. At the initial status conference of this matter, conducted on November 27, 2017, this Court instructed counsel to advise the Court of any evidence of pending or executed fraudulent transfers occurred or threatened in this case.

8. Pursuant to the Court's instructions, creditors provide notice of the following potentially fraudulent transfers conducted by debtor, its insiders, or by professionals employed by debtor at the time of this bankruptcy filing:

a. On June 30, 2017 and July 10, 2017, two separate courts in different cases found that this debtor was engaged in efforts to avoid collection efforts ordered by the court. True and correct copies of the state court decisions in which these findings of fact are entered are attached hereto as ***Exhibit "1"*** and incorporated herein by reference.

b. As debtor's counsel is aware, not least by having been notified in these proceedings (*See* Document Nos. 12 and 15, filed into this case in December 2017), one of the attorneys of record for debtor used two shell companies to purchase substantially all of the assets of debtor.

   i. Unbelievably, it is this "sale" of assets that debtor now cites as the reason this case should be converted from an involuntary Chapter 11 to a voluntary Chapter 7 case.

c. The following unusual circumstances surround this foreclosure sale:

   i. The purchaser of the property, Manfred Sternberg (***"Sternberg"***), is the debtor's manager's long-time attorney of record. A true and correct copy of the filing in an underlying state court case in which Sternberg assumed representation of this debtor's manager is attached hereto as ***Exhibit "2"*** and incorporated herein by reference.

      1. The purchase by debtor's attorney appears to clearly violate Rule 1.08 of the Texas Disciplinary Rules of Professional Conduct, which prohibit an attorney from obtaining a proprietary interest in property subject to litigation in which he represents a client. *See* Tex. Disciplinary R. Prof. Conduct

        1.08(h), which states "a lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may (1) acquire a lien to secure the lawyer's fees or expenses and (2) contract in a civil case for a contingent fee that is permissible under Rule 1.04."

    2. Based on the allegations by the parties in this case, the attorney acquired the liens from Alexander Energy and James W. Alexander Living Trust, f.k.a. James W. Alexander 1993 Living Trust ("***Alexander Energy***"), not for his professional fees or expenses – thus neither exception to Rule 1.08(h) is available.

  ii. Six days after the foreclosure sale, in the very same case in which Sternberg was the counsel of record for debtor, the county court of Harris County entered its order appointing a receiver.

    1. This order was signed, in part, because of debtor's active attempts to conceal assets from its creditors; and

    2. Despite repeated requests to debtor's current counsel and to Sternberg, no explanation of this transaction has ever been provided by debtor or debtor's counsel.

  iii. That debtor's attorney of record, Sternberg, is now the owner of debtor's sole asset through the use of two shell companies is, curiously, not mentioned in debtor's motion to convert – despite debtor's counsel being actually aware of this fact. *See* Mot. to Convert, p. 2-3, ¶¶ 8-10.

      iv. The company owned by Sternberg, the now purported owner of 100% of debtor's interest in real estate, is currently listed in debtor's schedules as an undisputed, secured creditor… thus itself presenting the following unusual circumstances:

          1. Debtor presently claims both that it has no assets but, at the same time, has secured creditors, and

          2. No explanation has been provided by debtor to its creditors for this discrepancy.

      v. Alexander Energy assigned all its right, title and interest in the underlying notes to Sternberg's company, which then foreclosed the note the very next day, yet Alexander Energy is also listed as an undisputed creditor.

          1. No explanation for this discrepancy has been provided by debtor, despite the issues being raised multiple times to debtor's counsel.

9. In January, after the entry of the order for relief in this case, the Texas Railroad Commission showed that the operator of record for the debtor's real estate asset was changed from debtor's name to a company called Texas Oil Resources Operating, LLC (*"Toro"*).

    a. Toro is owned and operated by James Trippon, ("*Trippon*"), the chief executive officer of debtor;

    b. Creditors have not been notified by Trippon regarding what rights were transferred, nor what value could be assigned to those rights; and

    c. No explanation of this relationship has been provided to creditors.

*Response to Motion to Convert Involuntary*
*Chapter 11 to Chapter 7*
Page 5 of 19

10. Again, creditors cannot provide any context for these events, because debtor refuses to cooperate with creditors' attempts to investigate.

## BACKGROUND FACTS

11. As early as June 29, 1995, Sternberg represented debtor's sole manager, Trippon. On page 3 of the attached *Exhibit "3"* is a copy of the Take Nothing Judgment indicating that Sternberg was attorney of record for Trippon in a cause number 93-42547.

12. On or about May 2, 2016 debtor was sued in Harris County Civil Court at Law No. 2 under Cause No. 1077227.

13. On June 30, 2017, the county court entered its turnover order and order appointing a receiver for substantially all of the property of debtor in that case. A copy of the Order Granting Turnover and Appointing a Receiver is attached hereto as *Exhibit "4"* and incorporated herein by reference.

14. In that case, the court made a finding of fact that this debtor was concealing assets from its creditors. Ex. 4.

15. On June 12, 2017 Sternberg created a special purpose entity known as ACSI Holdings, LLC ("*ACSI*"). A copy of the documents filed with the Texas Secretary of State's Office are attached hereto as *Exhibit "5"* and incorporated herein by reference. The sole manager of the ACSI is Affiliated Commercial Services, Inc. ("*Affiliated*"). Affiliated was also created by Sternberg. Sternberg is the president and sole director of Affiliated. A copy of the documents filed for Affiliated to the Texas Secretary of State's Office are attached hereto as *Exhibit "6"* and incorporated herein by reference.

16. Based on information and belief, Affiliated was, from its formation until the recent foreclosure, a credit collection company – possessing no ownership or interest in oil and gas production.

17. On June 13, 2017 John R. Banks, of Coplen & Banks, P.C. filed a Notice of Substitute Trustee's Sale on behalf of Alexander Energy. A copy of the Notice of Substitute Trustee's Sale is attached hereto as *Exhibit "7"* and incorporated herein by reference.

18. On July 3, 2017 Alexander Energy assigned "any and all interest it has in the Hockley Dome Indebtedness" to ACSI. The "effective date" written on the document was June 30, 2017. A copy of the Hockley Dome Indebtedness is attached hereto as *Exhibit "8"* and incorporated herein by reference.

19. The "effective date" of the Hockley Dome Indebtedness is the same date of the previously mentioned Order Granting Turnover and Appointing a Receiver, cause number 1077227 in Harris County Civil Court at Law No. 2. Again, the findings of fact by the civil court in that case found that this debtor was actively concealing assets from its creditors.

20. Mynde Eisen (*"Eisen"*) is the attorney of record in the Harris County Court No. 2 case, wherein an order appointing a receiver for all of the debtor's estate was entered on June 30, 2017.

21. On "July 5, 2017, but effective as of July 4, 2017" a Substitute Trustee's Deed with Bill of Sale was filed with the Harris County Clerk's Office. Debtor indicated that "… on or about July 4, 2017 the real property assets were foreclosed on for an approximate combined sum of $750,000." Mot., p. 3. ¶ 10.

22. Attached hereto is a true and correct copy of the Substitute Trustee's Deed with Bill of Sale as *Exhibit "9."* It is incorporated herein by reference.

23. The "Current Mortgagee" listed is ACSI. The "Buyer" listed is also ACSI.

24. The attorney to whom the filed Substitute Trustee's Deed with Bill of Sale was returned to was Eisen. Ex. 9.

25. Thus, an attorney representing the debtor, in a case where an order appointing a receiver was entered, assisted another attorney of record for the debtor, in a case where yet another receiver was set to be appointed mere days later, by transferring the property of the debtor away from the hands of its creditors.

26. On July 5, 2017 a Deed of Trust, Assignment of Production and Security Agreement signed by Sternberg and notarized by Eisen was filed with the Harris County Clerk's Office. A copy is attached hereto as *Exhibit "10"* and incorporated herein by reference.

27. The grantor was ACSI. The Lender was Alexander Energy. Ex. 10, p. 1.

28. Therefore, two undisputed creditors of this debtor, one of whom transferred all of its rights, titles and interests in liens that it had against the debtor, now have another relationship in which one creditor has become the debtor to another creditor for the property of the estate once owned by this debtor.

29. But the abnormalities in this case continue.

30. Only five days later, on July 10, 2017 an Order Granting Turnover and Appointing Receiver was signed against the debtor. The lawsuit was filed on or about March 14, 2016 in Harris County Civil Court at Law No. 3 under cause number 1974958. A copy of the Order Granting Turnover and Appointing Receiver is attached hereto as *Exhibit "11"* and incorporated herein by reference.

31. At the time of the Order Granting Turnover and Appointing Receiver, the attorney of record for debtor was Sternberg. Sternberg, through the use of shell companies, is now not only

the owner of all of the debtor's property in this case, but is also an undisputed creditor, while at the same time now being a debtor to another undisputed creditor in this case.

32. To recapitulate, Sternberg is the attorney of record in a case where a receiver was appointed because, the court held, debtor was actively concealing assets from its creditors.

33. Prior to Sternberg's representation of debtor, Eisen was the attorney of record in that very same case. Attached as *Exhibit "12"* is Defendant's Unopposed Motion to Substitute Counsel filed on January 20, 2017 by Eisen. Eisen, who has notarized several documents in assistance of the transfer described in the preceding paragraphs, thus possessed actual knowledge of the developments in the state court cases leading up to these transfers.

34. As of January 2018, Toro is listed as the field operator for the leases in Sternberg's "possession." The manager listed on Toro's Certificate of Formation is, incredibly, Trippon, the chief executive and chief financial officer of debtor.

35. The company was formed on November 17, 2016. This formation took place during the same time that debtor was being sued in the two previously mentioned cause numbers – 1077227 and 1974958 – the cases in which the state courts found this debtor was actively concealing assets from creditors. Attached hereto as *Exhibit "13"* is the Certificate of Formation for Toro.

36. All of the preceding information has been provided to debtor's counsel as well as filed of record in the office of the County Clerk of Harris County Texas or with the county and civil courts of Harris County, Texas. Much of the information has been filed previously as Document No. 15 in this case. Thus, debtor's counsel possesses actual knowledge of the activities of his client, but filed the Motion in spite of these anomalies on the conduct of debtor's business – after failing or refusing to provide any explanation to creditors or their counsel for these activities.

## ARGUMENTS AND AUTHORITY

### I. Debtor's Alleged Insolvency

37. Debtor alleges that "[o]n or about July 3, 2017, the personal assets were foreclosed on and on or about July 4, 2017 the real property asserts (*sic*) were foreclosed on for an approximate combined sum of $750,000." Mot. p. 4.

38. However, according to the court records of Harris County, the property that was supposedly foreclosed on was placed in *custodia legis* on June 30, 2017. *See* Ex. 1 and Ex. 4.

39. Regardless, not one but two state courts found that this debtor was actively concealing assets at the time this alleged foreclosure sale occurred. *Id.*

40. "If the debtor made the transfer… with actual intent to hinder, delay or defraud any creditor" then the transfer is void. Tex. Bus. & Com. Code § 24.005.

41. In determining intent under subsection (a)(1) of the Business and Commerce Code, consideration may be given to the following applicable factors under § 24.005:

   a. The transfer was to an insider;
      i. According to the definitions provided in § 24.002, Sternberg is an "insider" of Anloc, LLC.
   b. The debtor remained in possession or control of the asset after the transfer;
      i. Trippon is still in control of the operations of the company in charge of developing the asset under Toro and
      ii. Trippon remained the operator of record for the Texas Railroad Commission at all times from the filing of this involuntary petition until January of this year.
   c. The transfer or obligation was concealed;

    d. Before the transfer was made… the debtor had been sued or threatened with suit;

        i. See the records above, there was already at least one order appointing a receiver and another on its way when the debtor's attorney conducted the foreclosure sale.

    e. The transfer was substantially all of the debtor's assets;

        i. For support for this element, see Debtor's Motion, wherein debtor affirmatively states that it is now insolvent.

    f. The debtor removed or concealed assets; and

        i. Found by two separate state courts in Harris County.

    g. The debtor became insolvent after the transfer was made.

        i. This is the argument made by debtor in the Motion.

42. In state court, these factors are deemed "badges of fraud" under the Business and Commerce Code. *Ho v. McArthur Ranch, LLC*, 395 S.W.3d 325, 328-29 (Tex. App. – Dallas 2013, no pet.).

43. Creditors hereby formally allege that the alleged transfer of debtor's assets either was ineffective because the custody of the property was terminated as to the debtor by the state court on June 30, 2017, or the transfer was void as a matter of law because it triggered at least seven separate badges of fraud under state law.

## II.    No Creditors' Meeting

44. "Within a reasonable time after the order of relief in a case under this title, the United States Trustee shall convene and preside at a meeting of creditors." 11 U.S.C. § 341(a).

45. Because there has yet to be a creditors meeting under § 341, creditors have been unable to conduct any investigation into the "acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such a business…" 11 U.S.C.S. § 1103.

46. Furthermore, creditors point out that they have been unable to retrieve any information from debtor, and have not yet had a creditors' meeting in order to determine whether a rational basis to convert this motion exists.

47. Creditors note that the debtor in this case is supposed to act as a fiduciary of the creditors. *In re Whitehurst*, 198 B.R. 981 (Bankr. N.D. Ala. 1996).

48. A court may rule against a debtor's motion where the debtor's motion may assist a fraudulent act. *In re Kingston Square Assocs.*, 214 B.R. 713 (Bankr. S.D.N.Y. 1997). The movant has the burden of producing evidence that there is cause and it is in the best interests of the creditors to convert a case to a Chapter 7 liquidation. *Id.*

### III.    Two-factor analysis

49. Creditors agree with debtor's assertion that debtor was granted leave to file this motion. Mot. p. 2, ¶ 3. The agreement by debtor, however, contained no further relief from the requirements of the Bankruptcy Code. Thus, debtor was still bound by the requirements of § 1112 even after the order for relief was entered in this case.

50. A debtor may convert a case under Chapter 11 to a case under Chapter 7 "unless the case was originally commenced as an involuntary case under this chapter." 11 U.S.C.S. § 1112(a)(2). "While a Debtor may convert a case under Chapter 11 to a case under Chapter 7, he may not do so if the case originally was commenced as an involuntary case under Chapter 11. *In re Winn*, 49 B.R. 237, 240 (Bankr M.D. Fla. 1985).

51. A movant has the burden of producing evidence that there is cause for relief under § 1112(b). *In re Kingston Square Assocs.*, 214 B.R. 713.

52. A conversion is not granted automatically. *In re TMT Procurement Corp.*, 534 B.R. 912, 921 (Bankr. S.D. Tex. 2015).

53. A debtor in possession may be denied its requested relief when it fails to act in its fiduciary capacity on behalf of its creditors. *In re Whitehurst*, 198 B.R. 981 (Bankr. N.D. Ala. 1996).

54. Even where there is a showing of cause, a movant under § 1112 of the Bankruptcy Code must also show that the conversion is in the best interest of the creditors. *Id.*

55. The decision whether to convert a Chapter 11 bankruptcy is within the discretion of the Court. *In re Hampton Hotel Inv'rs, L.P.*, 270 B.R. 346 (Bankr. S.D.N.Y. 2001).

56. The Bankruptcy Court is not limited to deciding whether or not to convert a case under § 1112(b) but may, in fact, order any relief under § 1112 once the motion is brought. *Id.*

57. When a debtor acts in bad faith, a Court may, within its sound discretion, refuse to grant the relief requested. *In re Shea, Ltd.*, 545 B.R. 529, 535 (Bankr. S.D. Tex. 2016)(citing *In re JCP Props.*, 540 B.R. 596 (Bankr. S.D. Tex. 2015).).

58. Actions by a debtor to transfer assets beyond the reach of creditors is frequently looked at by courts for finding bad faith, whether or not the debtor is seeking to avoid the effects of judgment. *In re Paolini*, 312 B.R. 295, 308 (Bankr. E.D. Va. 2004).

59. Conversion of an involuntary Chapter 11 case is not in the best interests of the creditors under 11 U.S.C. § 1112(b) where the possibility of equity in land created a prospect that a party in interest could have developed a reorganization plan to pay all of the administrative

expenses and unsecured claims. *In re New Towne Dev., LLC*, 404 B.R. 140 (Bankr. M.D. La. 2009).

60. Even a liquidating plan of reorganization may be more advantageous than a standard Chapter 7 liquidation because it may still "constitute an 'effective reorganization.'" *In re Kadlubek Family Revocable Libing Trust*¸545 B.R. 660 (Bankr. Dist. N.M. 2016).

61. In order to convert this case, therefore, debtor has the burden to prove: a. good cause exists for the conversion; and b. that the conversion to a Chapter 7 liquidation is in the best interest of the creditors. *In re Kingston Square*, 214 B.R. 713.

62. Thus, even where a debtor shows that cause may exist for converting a case to Chapter 7, that debtor must also show that the conversion is in the best interests of the creditors. *In re Whitehurst*, 198 B.R. 981.

63. In such cases, it may be more appropriate for a Court to appoint a Chapter 11 Trustee. *In re Mid-South Bus. Assocs., LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016)(citing *In re New Towne Dev., LLC*, 404 B.R. 140 (Bankr. M.D. La. 2009).).

## IV. Alternatives

64. Actions by a debtor to transfer assets beyond the reach of creditors is frequently looked at by courts for finding bad faith. *In re Paolini*, 312 B.R. at 308.

65. When a debtor acts in bad faith, a Court may, within its sound discretion, refuse to grant the relief requested. *In re Shea, Ltd.*, 545 B.R. at 535.

66. Here, although the debtor alleges facts to show cause under a voluntary Chapter 11 case, it fails to argue that it would be in the best interest of the creditors for this Court to order a conversion to a Chapter 7 case.

67. Therefore, the Motion is facially defective.

68. Debtor failed to provide a single argument showing that the conversion is in the best interests of the creditors. 11 U.S.C. § 1112(b); *In re Whitehurst*, 198 B.R. 981.

69. Here, debtor not only fails to argue sufficient facts to meet the statutory requirements of § 1112, but also alleges that the "cause" asserted is the fraudulent transfer that led to the bankruptcy filing by the petitioning creditors – the sale of real estate to debtor's own attorney in an effort to conceal assets from its creditors.

70. Such an outcome would be prejudicial to the rights of the creditors, not done for their benefit.

71. Furthermore, the transfer is also void as a matter of law under Chapter 24 of the Texas Business and Commerce Code. Tex. Bus. & Com. Code § 24.002, *et seq.*

72. Conversion of an involuntary Chapter 11 case is not in the best interests of the creditors under 11 U.S.C. § 1112(b) where the possibility of equity in land created a prospect that a party in interest could have developed a reorganization plan to pay all of the administrative expenses and unsecured claims. *In re New Towne Dev., LLC*, 404 B.R. 140 (Bankr. M.D. La. 2009).

73. In such cases, it may be more appropriate for a Court to appoint a Chapter 11 Trustee. *In re Mid-South Bus. Assocs., LLC*, 555 B.R. at 570.

74. Even if a movant establishes cause for conversion, a court should not convert a case where unusual circumstances exist which call into question whether that conversion is in the best interests of the creditors. *In re Miell*, 419 B.R. 357 (Bankr. N.D. Ia. 2009).

75. Bankruptcy Courts have wide latitude to determine whether unusual circumstances exist that preclude conversion or dismissal. *Van Upp v. Van Upp*, 2012 U.S. Dist. LEXIS 102283 (N.D. Cal. 2012).

76. Where a court finds that subjective bad faith is exhibited by a debtor or that the debtor seeks to abuse the reorganization process, that court is justified in refusing to grant the relief requested by the debtor. *Rollex Corp. v. Associated Materials (In re Superior Siding & Window)*, 14 F.3d 240, 242 (4th Cir. 1994).

77. Under § 1112, a court should consider alternatives to converting or dismissing a case from the vantage point that is in the best interests of the creditors. *In re Ledges Apartments*, 58 B.R. 84 (Bankr. D.C. Vt. 1986).

78. Debtor's Motion asks this Court to convert this case from an involuntary Chapter 11 proceeding to a Chapter 7 proceeding to reward the debtor for engaging in a fraudulent transfer to the prejudice of its creditors.

79. Creditors believe that this attempt, made without citing to a single authority (not even § 1112 of the Bankruptcy Code) turns the equitable intent of the Bankruptcy Code and the requirement that the debtor operate in the best interests of its creditors on its head.

80. Instead, creditors ask this court to consider the alternatives provided in § 1112, whether that be the nomination of a trustee or the appointment of an examiner.

81. Creditors do not assert they will not move later for a conversion to Chapter 7, nor do they assert that such a conversion is unwarranted. Rather, creditors argue that this debtor has, as multiple state courts have found already, consistently operated with the intent to conceal assets from its creditors and to avoid paying lawful debts as they come due. Therefore, a third party should review the activities of this debtor in order to determine whether there are actually non-fraudulent grounds to convert this case from an involuntary Chapter 11.

82. Creditors argue that a trustee is warranted here for two reasons:

a. Petitioning creditors have already found a trustee who is ready, willing and able to serve, even in the face of potentially no recovery under the estate:

      i. Drew McManigle, Director for Sierra Capital Partners, has agreed to undertake such an inquiry under Chapter 11 already; and

   b. A trustee divests the debtor of its status as a debtor in possession, thus protecting the creditors from future fraudulent transfers by this debtor.

## CONCLUSION

WHEREFORE PREMISES CONSIDERED, Wilburn Energy, LLC, Arduous Energy Group, LLC, Anastasios Pistofidis, and others who have signed on as to form and substance, creditors, request this Court to enter an Order denying debtor's Motion for Conversion of Cases from Chapter 11 to Chapter 7, to consider nominating a Chapter 11 trustee in this matter, and for all such other and further relief to which creditors may be entitled.

        Respectfully Submitted,

        J A Lambert, PLLC

        10200 Highway 290 West, Suite 206
        Austin, Texas 78736
        Telephone: 888-731-1324
        Facsimile: 888-508-6110

        */s/Jeffrey Allen Lambert*
        Jeffrey Allen Lambert
        jeff@jalambertpllc.com
        State Bar Number: 24087879

        */s/ Aamir S. Abdullah*
        Aamir S. Abdullah
        aamir@jalambertpllc.com
        State Bar No. 24077149

        **ATTORNEYS FOR CREDITORS WILBURN ENERGY, LLC; ARDUOUS ENERGY GROUP, LLC; AND ANASTASIOS PISTOFIDIS**

        **Approved as to Form and Substance:**

        Porter, Rogers, Dahlman & Gordon, P.C.

        800 North Shoreline Blvd., Suite 800 S
        Corpus Christi, Texas 78401
        Telephone: 361-880-5850
        Facsimile: 361-880-5844

        /s/ Louis William
        Louis Williams
        lwilliams@prdg.com
        State Bar Number: 24088645
        Federal ID: 2542282

        **ATTORNEYS FOR ARROW DRILLING COMPANY, INC.**

*Response to Motion to Convert Involuntary Chapter 11 to Chapter 7*
Page 18 of 19

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served via electronic filing upon all parties registered to receive such service on February 7, 2018.

>/s/Jeffrey A Lambert
Jeffrey Lambert